UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| VALERIE J. JARMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WALDO COUNTY GENERAL HOSPITAL, | ) |
| | ) |
|     Defendant | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff, Valerie J. Jarman, hereby complains against Defendant, Waldo County General Hospital ("WCGH"), as follows:

**JURISDICTION AND ADMINISTRATIVE PROCEEDINGS**

1) This action arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (the "ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehab Act"); the Civil Rights Act of 1991, 42 U.S.C. § 1981(a); and the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 et seq.

2) This court has proper subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 2000e-5(f)(3), 12117(a).

3) This court has proper supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4) On or about June 15, 2015, Plaintiff filed a charge of employment discrimination against Defendant with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

5) On December 30, 2015, the MHRC issued Plaintiff a right-to-sue letter pursuant to the MHRA, 5 M.R.S. § 4612(6).

6) On April 5, 2016, the EEOC issued Plaintiff a notice of right to sue pursuant to the ADA, 42 U.S.C. §§ 2000e-5(f)(1), 12117.

7) Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201, 2202; 29 U.S.C. § 794; 42 U.S.C. §§ 2000e-5, 12117; 5 M.R.S. § 4613(2)(B).

8) Compensatory damages are sought pursuant to 29 U.S.C. § 794, 42 U.S.C. § 1981a, and 5 M.R.S. § 4613(2)(B)(8).

9) Punitive damages are sought pursuant to 42 U.S.C. § 1981a and 5 M.R.S. § 4613(2)(B)(8).

10) Costs and attorney's fees are sought pursuant to 29 U.S.C. § 794, 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 12205, 5 M.R.S. § 4614, and Federal Rule of Civil Procedure 54.

## PARTIES

11) Plaintiff is a citizen of the United States and the State of Maine who resides in the Town of Unity, County of Waldo, State of Maine.

12) Defendant WCGH is a Maine corporation located in the City of Belfast, County of Waldo, State of Maine.

13) At all material times, WCGH operated a "program or activity receiving Federal financial assistance" within the meaning of 29 U.S.C. § 794.

14) This action properly lies in the District of Maine pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

15) This action is properly filed and shall be tried in Bangor because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Waldo County, Maine.

16) At all material times, WCGH was engaged in an industry affecting commerce and had 15 or more employees for each working day in each of 20 or more calendar weeks.

## STATEMENT OF FACTS

17) Plaintiff worked for WCGH as an Operating Room Nurse/Circulator from 2006 until January 9, 2015.

18) Plaintiff performed her job well throughout her employment.

19) Gail Dudley, RN, BSN, supervised Plaintiff.

20) At all material times, Plaintiff had bilateral CMC Arthritis and Carpal Tunnel Syndrome.

21) Plaintiff's medical conditions had an actual or expected duration of more than six months and impaired her physical health to a significant extent compared to what is ordinarily experienced in the general population.

22) Her medical conditions also substantially limited one or more of her major life activities, including performing manual tasks and working.

23) Plaintiff's CMC Arthritis and Carpal Tunnel Syndrome were also a record of a protected disability within the meaning of the MHRA, 5 M.R.S. § 4553-A(1)(C); the ADA, 42 U.S.C. § 12102(1)(B); and the Rehab Act, 29 U.S.C. § 794(d), 42 U.S.C. § 12102(1)(B).

24) WCGH also regarded Plaintiff's CMC Arthritis and Carpal Tunnel Syndrome as being a disability under the MHRA, 5 M.R.S. § 4553-A(1)(D); the ADA, 42 U.S.C. § 12102(1)(C), (3); and the Rehab Act, 29 U.S.C. § 794(d), 42 U.S.C. § 12102(1)(C), (3).

25) On December 11, 2014, because of pain she was experiencing due to her disabilities, Plaintiff asked Nurse Dudley for a reduced work schedule of working two days a week for a short period of time, perhaps six months, as a reasonable accommodation for her disabilities.

26) Nurse Dudley told Plaintiff that she could not reduce her work schedule. Rather, Nurse Dudley told Plaintiff that she should give up her full-time position and work as a per diem employee.

27) Accordingly, Plaintiff requested to work as a per diem employee and stated that she would continue to hold her full-time position until a replacement was found.

28) Despite Plaintiff's request WCGH did not place Plaintiff on a per diem schedule.

29) During the first week in January 2015, Plaintiff called out of work because she was in pain due to her disabilities.

30) On January 7, 2015, the Chief Nursing Officer called Plaintiff and asked her why she did not come in to work. Plaintiff responded that her hands were hurting and offered to submit a doctor's note supporting her absence. The Chief Nursing Officer told Plaintiff that she did not want the doctor's note, that she wanted her to come in and work the full day.

31) In response, Plaintiff on January 7th wrote an email to WCGH human resources stating, in part, that she had never received a response to her request to work per diem, that full-time work was having a negative effect on her health, and that she would have no choice but to resign if WCGH was not willing to utilize her in a reduced capacity.

32) On January 9, 2015, Nurse Dudley left Plaintiff a voicemail stating that WCGH had decided to accept her resignation.

33) Plaintiff did not resign; rather, WCGH terminated her employment.

34) Alternatively, if Plaintiff's January 7th email is interpreted to be a resignation, Plaintiff was forced to resign and was constructively discharged due to WCGH's failure to reasonably accommodate her.

35) WCGH failed to engage, in good faith, in an informal, interactive process with Plaintiff to identify reasonable accommodations for her disabilities, including, but not limited to, a short-term reduction in her work hours, a short-term leave of absence, a temporary modification of her job duties, a change to per diem status, or reassignment to a vacant position, all of which would have enabled Plaintiff to perform the essential functions of her job.

36) WCGH failed to reasonably accommodate Plaintiff's disabilities by providing these accommodations.

37) WCGH intentionally terminated her employment because of her disabilities.

38) WCGH acted with reckless indifference to Plaintiff's rights under the ADA and the MHRA.

39) As a result of WCGH's unlawful discrimination in employment against Plaintiff as alleged herein, Plaintiff has suffered personal physical injuries or physical sickness, lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, emotional distress, and other pecuniary and non-pecuniary losses.

40) Plaintiff has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by WCGH unless it is enjoined by this Court.

## COUNT I:  ADA

41) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

42) At all material times, Plaintiff was qualified to work for WCGH, meaning, with or without reasonable accommodations, she could perform the essential functions of her job or another available position.

43) WCGH failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine an appropriate accommodation, in violation of the ADA.

44) WCGH denied Plaintiff reasonable accommodations for her disabilities, in violation of the ADA.

45) WCGH discharged Plaintiff from employment on the basis of her disabilities, in violation of the ADA.

## COUNT II: REHAB ACT

46) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

47) WCGH failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine an appropriate accommodation, in violation of the Rehab Act.

48) WCGH denied Plaintiff reasonable accommodations for her disabilities, in violation of the Rehab Act.

49) WCGH discharged Plaintiff from employment on the basis of her disabilities, in violation of the Rehab Act.

## COUNT III: MHRA

50) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

51) WCGH failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine an appropriate accommodation, in violation of the MHRA.

52) WCGH denied Plaintiff reasonable accommodations for her physical disabilities, in violation of the MHRA.

53) WCGH discharged Plaintiff from employment because of physical disabilities, in violation of the MHRA.

## DEMAND FOR JURY TRIAL

54) Plaintiff demands a trial by jury on all matters to which Plaintiff has a right to trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) Enter Judgment in her favor;

(b) Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

(c) Enjoin Defendants, their agents, successors, employees, and those acting in concert with Defendants from continuing to violate the rights of the Plaintiff;

(d) Order Defendants to employ Plaintiff as if none of the discrimination had occurred or, in lieu of employment if such employment is determined to be impracticable, order front pay and benefits;

(e) Award Plaintiff back pay, lost employment benefits, other lost compensation, and interest on those amounts;

(f) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(g) Award Plaintiff an amount to offset the state and federal taxes she will be required to pay for compensatory damages and any increased taxes she will have to pay because she has received a lump sum for lost wages, employment benefits, or other lost compensation;

(h) Award Plaintiff nominal damages;

(i) Award Plaintiff punitive damages in an amount to be determined at trial of this matter;

(j) Award Plaintiff attorney's fees, including legal expenses, expert witness fees, and costs of suit;

(k) Award Plaintiff prejudgment interest; and

(l) Grant Plaintiff such other and further relief as may be just and proper.

Dated: July 5, 2016                    /s/ John P. Gause
                                       _____
                                       John P. Gause, Esq., Bar No. 8192
                                       Eastern Maine Law, LLC
                                       77 Exchange Street, Suite 300
                                       Bangor, ME 04401
                                       (207) 947-5100
                                       jgause@easternmainelaw.com

                                       ATTORNEY FOR PLAINTIFF